# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LIANE MCDONALD | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 16-264 |
| WELLS FARGO BANK, N.A. | : | |

## MEMORANDUM

**KEARNEY, J.**                                                             **September 18, 2018**

A Pennsylvanian buying a car in Ohio financed her car purchase under a financing agreement governed by Ohio law. She passed away after paying several monthly installments on her car loan. Someone kept paying the car loan for a couple years and then stopped. Missing payment for several months in 2012, the lender Wells Fargo sent notice of repossession to the unknowingly deceased borrower and later sold the car in a manner not compliant with the notice it sent to the deceased borrower. Over three years later, a presumed family member opened an estate and sued Wells Fargo for breach of the financing agreement, violation of the Uniform Commercial Code's notice obligations, conversion and to recover the surplus. Under Ohio law, a survivor may not bring a claim but she may under Pennsylvania law. Relying on the governing Ohio law in the financing agreement, we dismissed the complaint and our court of appeals agreed as to the breach of contract. But the court of appeals remanded the statutory and conversion claims for us to determine whether those claims are analyzed under Pennsylvania rather than Ohio law. Wells Fargo again moves to dismiss the survivor's statutory notice and conversion claims arguing they are barred by Ohio law and, if even if Pennsylvania law applies, the estate/survivor does not state a claim. We disagree, finding Pennsylvania law applies to these claims absent a further factual record and the survivor otherwise pleads a claim.

## I. Background

### A. Alleged facts.

Pennsylvanian Patricia A. McDonald purchased a GMC Sierra from Performance GMC in New Waterford, Ohio, a short drive from the Pennsylvania border, in April 2007.[1] She financed the purchase through the dealership.[2] The parties signed a financing agreement requiring Mrs. McDonald satisfy the loan in monthly payments of $465.86.[3] The parties agreed Ohio law "appl[ied] to this [financing agreement]."[4] Performance GMC immediately assigned the financing agreement to Wells Fargo, making Wells Fargo the creditor and secured party under the agreement.[5]

Mrs. McDonald passed away in December 2009.[6] Someone continued making her car payments through July 2012.[7] The payments ceased thereafter.

Wells Fargo repossessed Mrs. McDonald's vehicle on November 28, 2012.[8] On November 30, 2012, Wells Fargo sent "Patricia McDonald" a "Notice of Our Plan to Sell Property."[9] The Notice informed Patricia McDonald Wells Fargo repossessed her 2002 GMC Sierra on November 28, 2012, due to a default on the parties' financing agreement. Wells Fargo represented she failed to make her August 2012 through November 2012 payments.[10] Wells Fargo further told Mrs. McDonald it would sell her vehicle on January 3, 2013, "at public sale at a minimum bid of [$]9,157.00."[11] The Notice identified the time and location of the sale, and told Mrs. McDonald "[y]ou can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses."[12] To learn the exact amount, however, she had to call Wells Fargo.

Despite the reported sale date of January 3, 2013, Wells Fargo did not sell Mrs. McDonald's vehicle until January 22, 2013.[13] Wells Fargo did not issue a new notice disclosing

2

the vehicle would be sold at a later date.[14] Wells Fargo sent a post-sale notice on January 27, 2013. It told Mrs. McDonald the company sold her vehicle for $3,400, and after applying the proceeds from the sale, she owed a deficiency balance of $292.89.[15]

### B. Relevant procedural history.

The Orphans Court of Westmoreland County, Pennsylvania appointed Liane McDonald to represent Patricia A. McDonald's estate on December 31, 2015 – over six years after Mrs. McDonald's passing.[16] Liane McDonald, then proceeding as Administratrix of the Estate, sued Wells Fargo in the Court of Common Pleas of Westmoreland County, Pennsylvania, seeking to represent a class of Pennsylvanians who received insufficient notice preceding the sale of their repossessed vehicles.[17] Wells Fargo removed the case based on our diversity jurisdiction over class actions in which the amount in controversy exceeds $5 million, exclusive of interests and costs.[18] Liane McDonald, on behalf of the Estate, filed an amended complaint on April 29, 2016, alleging Wells Fargo failed to provide her post-repossession notice required by both Pennsylvania law and the parties' contract.[19] The Estate further alleges Wells Fargo sold her vehicle for an amount less than it promised it would accept. The Estate alleges Wells Fargo deprived some unknown person of an opportunity to purchase the vehicle back for less than Wells Fargo represented in the Notice it would accept, and also diminished or even eliminated surplus the estate may have otherwise received.[20]

The Estate, through Liane McDonald, seeks to represent a class of current and former Pennsylvanians who received similarly deficient notices from Wells Fargo alleging violations of Pennsylvania's Uniform Commercial Code relating to post-repossession disposition of collateral, breach of contract, conversion, and loss of surplus. Wells Fargo moved to dismiss the amended

3

complaint, contending neither Pennsylvania nor Ohio law permit the Estate to bring these claims as survival actions.[21] We granted Wells Fargo's motion to dismiss the case.[22]

### C. Our Court of Appeals remanded for a choice-of-law analysis.

The Estate appealed. Our Court of Appeals agreed Liane McDonald cannot bring her claims as survival actions under Ohio law.[23] Because the Estate conceded Ohio law governs the breach of contract claim, our Court of Appeals affirmed its dismissal.[24] Our Court of Appeals reached a different conclusion under Pennsylvania law, concluding "McDonald [on behalf of the Estate] has the power to maintain her causes of action against Wells Fargo should Pennsylvania law be found to apply to them."[25] Our Court of Appeals declined to address Wells Fargo's other arguments in favor of affirming our dismissal, and remanded to determine in the first instance whether Pennsylvania or Ohio law applies to the Estate's remaining claims. Resolution is dispositive as these claims may proceed only if we determine Pennsylvania law applies.[26]

On remand, Wells Fargo now moves to dismiss the remaining claims.[27] We deny its motion to dismiss.

### II. Analysis

The Estate, through Liane McDonald, alleges Wells Fargo violated Pennsylvania's Commercial Code (UCC) provisions "govern[ing] the rights of a secured party upon default by a debtor."[28] The Estate alleges Wells Fargo failed to provide accurate post-repossession notice and did not dispose of her vehicle in a commercially reasonable manner.[29] The Estate alleges as a result of this inaccurate information, Wells Fargo deprived the putative class members of a fair opportunity to protect their rights, such as by bidding on their own vehicles. The Estate seeks actual damages for the loss of surplus suffered because Wells Fargo failed to comply with the UCC.

4

The Estate also alleges Wells Fargo breached promises it made in the parties' financing agreement by failing to tell Ms. McDonald – or whoever was then paying on a monthly basis - how much to pay to redeem the vehicle and failing to send notice of a right to reinstate and the date on which that notice would expire. The Estate alleges Wells Fargo disposed of Mrs. McDonald's car without lawful justification.[30] The Estate bases its conversion theory on violations of both Pennsylvania law and the parties' financing agreement.[31]

### A. Pennsylvania law governs the Estate's claims.

The Estate and Wells Fargo dispute which state's law applies to the remaining claims. Wells Fargo directs its arguments at the Estate's claims under the Uniform Commercial Code (UCC). Wells Fargo argues we must apply Ohio law because the parties' choice-of-law provision states Ohio law governs the parties' financing agreement; the U.C.C. claims, by definition, arise out of the parties' contract; and, already conceded Ohio law applies to her breach of contract claim. The Estate disagrees. It argues the parties' choice-of-law provision is narrow and does not encompass the U.C.C. claims which arise separately under statute. It also argues Pennsylvania maintains a paramount interest in applying its laws protecting its citizens from secured creditors.

When sitting in diversity, "we apply the choice-of-law rules of the forum state."[32] "'Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum'" and the provision encompasses the asserted claims.[33] If the parties' agreement contains a narrow provision, which "limit[s] their chosen law to the interpretation and execution of the terms of their agreement,"[34] statutory and tort claims fall outside its reach, and we must apply Pennsylvania's general choice-of-law test.[35] But if the parties' agreement contains a broad provision, "encompass[ing] collateral matters

5

arising from the relationship, including tort claims," the analysis ends if there is a reasonable relationship to the Commonwealth.[36]

We must determine whether the parties' choice-of-law provision is broad or narrow—in other words, whether the Estate's remaining claims fall within the scope of the parties' choice-of-law provision. Mrs. McDonald and the dealership agreed "[f]ederal law and the law of the state of our address shown on the front of this contract apply to this contract."[37] The provision is narrow. It provides applicable Ohio law is limited "to *this contract*."[38] The parties have not manifested intent to litigate tort and statutory claims under Ohio law. Ample authority supports this conclusion. In *De Lage Landen Financial Services v. Cardservice International, Inc.*, for example, the court considered a choice-of-law provision requiring the parties' agreement be "governed by and construed in accordance with the laws of Pennsylvania."[39] The court concluded the "operative terms" limited the provision's scope "to the interpretation and enforcement of the agreement," and thus while the provision "encompasse[d] questions of fraudulent inducement," it did "not encompass a statutory tort claim for deceptive business practices."[40]

This court reached a similar conclusion in *Grimm v. Citibank (S. Dakota), N.A*, in which the choice-of-law provision required "[t]he terms and enforcement of this Agreement shall be governed by federal law, and the law of South Dakota, where we are located."[41] This court held the agreements were "narrowly drawn" because the language "sp[oke] only to the enforcement of each of the agreements themselves, and not to all matters relating to the parties."[42] This court held the parties' breach of contract dispute fell within the scope, but concluded it did not encompass plaintiffs' remaining tort and statutory claims.[43] Liane McDonald directs our attention to *Holloway v. Fres-Co System USA, Inc.*, a case which further supports our conclusion

6

the agreement is narrow. The choice-of-law provision in *Halloway* provided "[t]his Agreement "shall be construed and interpreted according to the law of the Commonwealth of Pennsylvania, in effect on the date hereof."[44] The court held the parties' "choice of law clause is a narrow provision, not one intended to encompass all possible disputes between the parties," and thus did not control the Plaintiff's employment discrimination claim.[45]

The choice of law provision in Mrs. McDonald's financing agreement is narrow and does not control the statutory and tort claims. We apply Pennsylvania's choice-of-law analysis. We first ask "if there is an *actual* or real conflict between the potentially applicable laws."[46] If we determine Pennsylvania and Ohio "laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary."[47] But if we identify a conflict, we must classify it based on which of the two states, if any, has an interest in having its respective law applied.[48]

We identify an actual conflict, as Pennsylvania and Ohio law "are actually incompatible."[49] As our Court of Appeals acknowledged, the Estate, through Liane McDonald, may proceed only if we conclude Pennsylvania law applies, because Ohio, unlike Pennsylvania, does not permit Liane McDonald to bring these claims as survival actions. Although this difference in Pennsylvania and Ohio law is the entire purpose of our Court of Appeals' remand, as Wells Fargo observes, the Estate argues there is *no* conflict between Pennsylvania and Ohio law because of the similarity in the underlying Pennsylvania and Ohio UCC provisions and conversion claims. Although this argument proceeds on the questionable premise we may ignore Ohio's choice to foreclose a survival action, we need not address the interesting question here because even after assessing each state's interest in the litigation, we conclude Pennsylvania has the greater interest in applying its law.[50]

7

If "both jurisdictions have a governmental policy or interest that would be impaired by the application of the other state's law," there is a "true conflict."[51] We face a true conflict. Pennsylvania enacted statutory notice requirements to protect its citizens after secured creditors repossess collateral. In addition to the substantive protections at issue here, the Commonwealth further manifests this intent in 13 Pa.C.S.A. § 9602, providing the UCC claims may not be waived or modified by agreement.[52]

Ohio also has an interest in the application of its laws to this case. Patricia McDonald traveled to Ohio to purchase a vehicle from an Ohio dealer, and the Estate does not dispute the parties signed an agreement providing at least some of their relationship would be subject to Ohio law. Ohio, unlike Pennsylvania, does not offer a survival action under which the Estate could bring these claims, indicating Ohio has at least some interest in protecting its businesses who seek protection under the laws of Ohio.[53]

We must therefore consider which state has the greater interest in application of its laws. "To do so, we use a methodology that combines the approaches of the *Restatement (Second) of Conflicts of Law* and governmental interest analysis."[54] We "take the following contacts into account: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties."[55]

The first factor, the place of contracting, points to Ohio. The Estate does not allege where the parties signed the contract, though we may draw the reasonable inference they signed at the Ohio dealership. The second factor, the place of negotiation, is indeterminate at this stage of the litigation. The Estate does not allege where the parties negotiated the contract. The third factor, the place of performance, is also indeterminate, as the initial contracting parties were in

8

Ohio (the dealership) and Pennsylvania (Patricia McDonald). The fourth factor, the location of the subject matter of the contract, points to Pennsylvania. At all times, Mrs. McDonald was a Pennsylvania resident, and she used her vehicle for personal use. The fifth and final factor—the domicile, residence, nationality, place of incorporation and place of business of the parties—points to Pennsylvania. Mrs. McDonald and now the Estate through its representative was at all times a Pennsylvania resident.[56] Performance GMC, the initial contracting party and secured creditor, conducted business in Ohio, but we do not know its incorporation, and the dealership "immediately assigned" the contract to Wells Fargo. Wells Fargo alleges it is a citizen of South Dakota.[57] Wells Fargo provided detailed information regarding its contacts to Pennsylvania, but neither the Estate nor Wells Fargo allege details about Wells Fargo's business in, and contacts with, Ohio.

At this preliminary stage, the balance of these factors tilts toward Pennsylvania law. We are mindful, however, the parties may discover material information about their contacts and relationship warranting consideration of this issue anew at summary judgment.[58]

### B. We deny Wells Fargo's substantive argument for dismissing Mrs. McDonald's UCC claims.

Wells Fargo argues even if we apply Pennsylvania's version of the UCC, the Estate cannot recover because Wells Fargo had no known debtor with whom it could communicate.[59] The UCC provision Wells Fargo cites provides "[u]nless a secured party knows that a person is a debtor or obligor, knows the identity of the person and knows how to communicate with the person[,] the secured party is not liable to the person . . . for failure to comply with this division."[60] Even putting to the side the Estate's point we may not consider this argument, we find Wells Fargo's argument unavailing at this stage. Determining Wells Fargo's knowledge—

9

or lack thereof—of the debtor's identity would require resolving a factual dispute, which we cannot do at this stage of the litigation.

### C. The Estate's conversion claim survives dismissal.

Wells Fargo separately challenges the conversion claim, arguing the Estate's conversion claim is time-barred under Pennsylvania's two-year statute of limitations because "[t]he Estate did not file this action until January 25, 2016—over three years after the repossession and sale."[61] The Estate contends our Court of Appeals already answered this question in her favor. Our Court of Appeals considered the statute of limitations and said the appointment of Liane McDonald in 2015—"years after the sale of the vehicle"—does not prevent her from bringing these causes of action in Pennsylvania because Pennsylvania "statutes of limitations run 'from the grant of administration.'"[62] Wells Fargo presented its statute of limitations argument to our Court of Appeals, and we have no reason to question the court's statement. But even if our Court of Appeals left open a question relating to the application of tolling, we decline to address it at this early stage.[63]

Wells Fargo next argues the Estate's conversion claim is actually a breach of contract claim in the guise of a tort claim and we must dismiss it under the "gist of the action doctrine."[64] The doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims."[65] While the existence of a contractual relationship alone "does not preclude one party from bringing a tort claim against the other," the doctrine "forecloses a party's pursuit of a tort action for the mere breach of contractual duties, without any separate or independent event giving rise to the tort."[66]

The Estate's conversion claim is premised, in part, on the theory Wells Fargo breached its statutory duty to provide detailed and accurate notice following the repossession of the vehicle.[67]

10

Courts in this Circuit repeatedly decline to dismiss statutory claims under the "gist of the action doctrine."[68] We join those courts and decline to do so here, mindful as well of the challenges we face in making such a determination at this early stage in the litigation.[69]

Wells Fargo next contends the Estate cannot state a claim for conversion because she does not dispute she defaulted under the financing agreement, and Wells Fargo "was legally justified in repossessing the Sierra."[70] The Estate argues Wells Fargo's failure to provide sufficient notice extinguished any initial lawful justification it had in possessing the vehicle. This issue presents a closer question.

"Under Pennsylvania law, conversion is (1) the deprivation of another's right in, or use or possession of, property, (2) without the owner's consent, and (3) without lawful justification."[71] The parties' arguments focus on what constitutes a "lawful justification." Wells Fargo directs our attention to *Scott v. Fred Beans Chevrolet of Limerick, Inc.*, which supports its argument that failure to provide sufficient notice under the U.C.C. does not support a conversion claim.[72] The court in *Scott* held the jury should decide the extent of plaintiff's compensable injury for a defendant's failure to provide pre-sale notice under the UCC.[73] But the court also granted the defendant's motion for summary judgment on plaintiff's conversion claim because plaintiff "consented to the repossession of the car and [the defendant] was legally justified in repossessing the property, as [the plaintiff] had failed to make her car payments for at least six months."[74]

The Estate relies on *Nawrocki v. Faulkner Ciocca Ford of Souderton*, where the court found Section 623 of Pennsylvania's Motor Vehicle Sales Finance Act, specifying "what constitutes adequate repossession notice[,] . . . provides plaintiffs with a way to establish an element of the tort of conversion."[75] The court further held "[a] plaintiff could establish lack of lawful justification by demonstrating that the repossession notice is defective under § 623."[76]

11

Reading these cases together, dismissal is improper at this early stage. Wells Fargo's justification for possessing the vehicle is, in part, a question of fact we cannot now resolve.

### III. Conclusion

In the accompanying Order, we deny Wells Fargo's motion to dismiss. On the present record, we apply Pennsylvania law to the statutory notice and conversion claims. We need a more fulsome record before revisiting the choice of law and substantive questions raised by Wells Fargo. Under our pre-trial practices, we will be addressing these questions before issuing class notice should it be warranted.

---

[1] Complaint, ECF Doc. No. 12 ¶11; ECF Doc. No. 12-1 at 2 (listing Patricia McDonald's address as 231 Widmar Ave, Lower Burrell, PA 15068, Westmoreland County).

[2] *See* ECF Doc. No. 12 ¶ 12; ECF Doc. No. 12-1 (Retail Installment Sale Contract).

[3] *See* ECF Doc. No. 12-1 at 2.

[4] ECF Doc. No. 12-1 at 3; *see also McDonald v. Wells Fargo Bank, N.A.*, No. 16-4144, 2018 WL 2357764, at *1 n.2 (3d Cir. May 24, 2018) ("The address on the front of Patricia McDonald's contract is located in Ohio.").

[5] ECF Doc. No. 12 ¶ 14.

[6] *Id.* ¶ 15.

[7] ECF Doc. No. 12-2 at 3 (informing Patricia A. McDonald "[p]ayment is due for the months of 08/06/12, THROUGH, 11/06/12").

[8] ECF Doc. No. 12 ¶ 16.

[9] *Id.* ¶ 17; ECF Doc. No. 12-2. The notice was addressed to the then-deceased "Patricia A. McDonald" and contained a Pennsylvania address different than the one listed on the original

financing agreement. *Compare* ECF Doc. No. 12-1 at 2 (231 Widmar Ave, Lower Burrell PA, 15068); *with* ECF Doc. No. 12-2 at 2 (4199 Leechburg Rd., New Kensington PA, 15068).

[10] ECF Doc. No. 12-2 at 3.

[11] *Id.* at 2.

[12] ECF Doc. No. 12-2 at 2.

[13] *See* ECF Doc. No. 12 ¶ 18; ECF Doc. No. 12-3.

[14] *See* ECF Doc. No. 12 ¶ 19.

[15] *Id.* ¶ 18; ECF Doc. No. 12-3.

[16] *See* ECF Doc. No. 12 ¶ 9.

[17] *See* ECF Doc. No. 1-2 (original complaint).

[18] *See* ECF Doc. No. 1 (Notice of Removal).

[19] *See* ECF Doc. No. 12. Wells Fargo had moved to dismiss Liane McDonald's original complaint, *see* ECF Doc. No. 6, but the Court denied this motion as moot following Plaintiff's filing of an amended complaint, *see* ECF Doc. No. 14.

[20] ECF Doc. No. 12 ¶ 8.

[21] *See* ECF Doc. No. 19. Wells Fargo also argued the "gist of the action" doctrine and the statute of limitations barred the conversion claim. *See id.* at 11–15.

[22] *See* ECF Doc. No. 38 (Order Granting Motion to Dismiss); ECF Doc. No. 39 (Memorandum).

[23] *McDonald*, 2018 WL 2357764, at *2.

[24] *Id.* at *3

[25] *Id.* at *2.

[26] *Id.* at *2 (holding "McDonald cannot bring her claims as survival actions under Ohio law, and unlike Pennsylvania law, Ohio law does not have any other statutes under which McDonald can maintain her claims").

[27] *See* ECF Doc. Nos. 46–47 (Wells Fargo's motion to dismiss and supporting memorandum); ECF Doc. No. 52 (Mrs. McDonald's brief in opposition); ECF Doc. No. 54 (Wells Fargo's reply); ECF Doc. No. 57 (Mrs. McDonald's sur-reply brief). When considering a motion to

13

dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Insterstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[28] *Krajewski v. American Honda Finance Corp.*, 557 F. Supp. 2d 596, 606 (E.D. Pa. 2008).

[29] *See* ECF Doc. No. 12 ¶¶ 49–68.

[30] *Id.* ¶¶ 81–85.

[31] *Id.* ¶ 85.

[32] *Pacific Employers Ins. v. Global Reinsurance Corp.*, 693 F.3d 417, 432 (3d Cir. 2012); *see Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).

[33] *Gay v. CreditInform*, 511 F.3d 369, 390 (3d Cir. 2007) (quoting *Churchill Corp. v. Third Century, Inc.*, 578 A.2d 532, 537 (Pa. Super. Ct. 1990)).

[34] *De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.*, No. 00-2355, 2001 WL 799870, at *2 (E.D. Pa. July 12, 2001).

[35] *Heyl & Patterson, Inc. v. T.E. Ibberson Co.*, No. 2:14-CV-1299, 2015 WL 1186033, at *3 (W.D. Pa. Mar. 13, 2015) (quoting *De Lage*, 2009 WL 564627, at *11 n.12); *Grimm v. Citibank (S. Dakota), N.A.*, No. 08-788, 2008 WL 4925631, at *5 (W.D. Pa. Nov. 14, 2008).

[36] *De Lage*, 2009 WL 564627, at *2.

[37] ECF Doc. No. 12-1 at 3.

[38] *Id.* (emphasis added).

[39] *De Lage*, 2001 WL 799870, at *2.

⁴⁰ *Id.*

⁴¹ *Grimm*, 2008 WL 4925631, at *4.

⁴² *Id.* at *5.

⁴³ *Id.*

⁴⁴ *Holloway v. Fres-Co Sys. USA, Inc.*, No. 13-3337, 2014 WL 796000, at *3 (E.D. Pa. Feb. 28, 2014).

⁴⁵ *Id.*

⁴⁶ *Hammersmith*, 480 F.3d at 230.

⁴⁷ *Id.*

⁴⁸ *Id.*

⁴⁹ *Toll v. Tannenbaum*, 982 F. Supp. 2d 541, 549 (E.D. Pa. 2013), *aff'd*, 596 F. App'x 108 (3d Cir. 2014).

⁵⁰ We are mindful of Wells Fargo's reliance upon Section 635B of Pennsylvania's Motor Vehicle Sales Financing Act, 69 Pa. C.S. § 635 which confirms nothing in the Pennsylvania notice provisions in its Commercial Code can prevent contractual enforcement of obligations undertaken by Pennsylvanians outside of the Commonwealth. Nothing in today's Order affects this statutory carve-out to permit Ohio contracts to be enforced in accord with Ohio law. This section confirms our earlier dismissal of the breach of contract claim under Ohio law.

⁵¹ *Toll*, 982 F. Supp. 2d at 550.

⁵² 13 Pa.C.S.A. § 9602.

⁵³ *See Pacific Employers Ins.*, 693 F.3d at 436; *Stange v. Janssen Pharm., Inc.*, 179 A.3d 45, 65–66 (Pa. Super. Ct. 2018) (finding true conflict where Wisconsin "has an important interest in protecting its citizens, such as [Plaintiff], against tortious conduct" and "New Jersey's Products Liability Act reflects its policy of shielding its pharmaceutical industry from imposition of punitive damages").

⁵⁴ *Pacific Employers Ins.*, 693 F.3d at 436.

⁵⁵ *Id.* (citation and internal quotation marks omitted).

⁵⁶ ECF Doc. No. 12 ¶ 9; ECF Doc. No. 12-1 at 2; ECF Doc. No. 12-2 at 2.

[57] ECF Doc. No. 1 at 3.

[58] *Toll*, 982 F. Supp. 2d at 551 (describing how at the motion to dismiss stage "the Court permitted the parties to raise the choice-of-law issue again on summary judgment 'if new facts emerge in discovery which would invite the Court to reevaluate each state's relevant contacts'").

[59] ECF Doc. No. 47 at 10–12.

[60] 13 Pa.C.S.A. § 9628(a)(1).

[61] ECF Doc. No. 47 at 13.

[62] *McDonald*, 2018 WL 2357764, at *2 (quoting *Riner v. Riner*, 31 A. 347, 348 (1895)).

[63] *See In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 301–02 (3d Cir. 2010) ("[B]ecause the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion.").

[64] *See* ECF Doc. No. 47 at 16–18.

[65] *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).

[66] *The Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2009 WL 3427054, at *4 (E.D. Pa. Oct. 20, 2009), *aff'd*, 625 F. App'x 27 (3d Cir. 2015).

[67] *See* ECF Doc. No. 12 at ¶ 85 ("Because the sale notices that the Defendant issued to the members of the Sale Notice Subclass were defective under the UCC, the MVSFA and/or the RISCs, the Defendant lacked lawful justification to dispose of the vehicles of members of the Sale Notice Subclass.").

[68] *See Sproul Hill Assocs., L.P. v. Newell Rubbermaid Inc.*, No. 13-4998, 2013 WL 6731976, at *3 (E.D. Pa. Dec. 23, 2013); *Knitting Fever, Inc.*, 2009 WL 3427054, at *6 ("Where a statutory cause of action does not clearly sound in contract or tort, such as a RICO claim, it does not implicate the concerns underlying the gist of the action doctrine."); *Clark v. EMC Mortg. Corp.*, No. 08-1409, 2009 WL 229761, at *6 (E.D. Pa. Jan. 29, 2009) (declining to dismiss statutory claims under the "gist of the action" doctrine because "the Court must consider Plaintiffs' statutory and common law claims as what they are—separate claims").

[69] *Weber Display & Packaging v. Providence Washington Ins. Co.*, No. 02-7792, 2003 WL 329141, at *4 (E.D. Pa. Feb. 10, 2003).

[70] ECF Doc. No. 47 at 18.

[71] *Avanti Wind Sys., Inc. v. Shattell*, No. 14-98, 2016 WL 3211990, at *22 (W.D. Pa. June 9, 2016).

[72] 183 F. Supp. 3d 691 (E.D. Pa. 2016).

[73] *Id.* at 697–98.

[74] *Id.* at 700.

[75] *Nawrocki v. Faulkner Ciocca Ford of Souderton*, No. 07-1827, 2007 WL 3146671, at *6 (E.D. Pa. Oct. 29, 2007).

[76] *Id.*